## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANGELA YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 06-3106 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Plaintiff Angela Young ("Young") alleged that her employer,
Defendant Illinois Department of Revenue ("Department" or "Department
of Revenue"), sexually discriminated against her in violation of 42 U.S.C.
§ 2000e-2(a).  The Department now moves for summary judgment (d/e 15)
on this claim.

Because this Court concludes that an unresolved issue of material fact
exists, the motion (d/e 15) must be denied.

## I.  FACTS

### A.    Introduction

Endeavoring to eliminate inefficiencies in their operations, the Department of Revenue ordered a number of layoffs in October of 2003. Pursuant to this policy, Public Service Administrator Jay Neposchlan ("Neposchlan"), the acting Manager ("Division Manager") of the Operational Special Services Division ("Special Services Division" or "Division"), was instructed to identify "redundant or stacked levels of managers" (i.e., extra tiers of management).  Neposchlan eventually eliminated Young's position.  Though he claims his decision was based on the organizational structure of the Division, Young asserts that her job was terminated because of her sex in violation of 42 U.S.C. § 2000e-2(a).

### B.    Organizational Structure of the Special Services Division

#### 1.    Undisputed Facts

The Special Services Division handles numerous functions, including fleet management, warehouse operations, mailing, printing, and shredding. In 2003, several managerial positions supervised these functions, including

2

two Executive II positions and two Executive I positions.  The Executive I positions were held by Young and Doug Strohm ("Strohm").  Young, a female employee, oversaw the Mail and Messenger Services Unit,[1] the Shred Unit,[2] and the Pik & Pak Unit.[3]  Doug Strohm, a male employee, managed the Print Shop.  Both Strohm and Young supervised a number of full time employees, though Young's position also required her to monitor a number of temporary workers.

### 2.    Department's Position

According to the Department's organizational chart,[4] the Executive I positions reported to separate Executive II positions.  Strohm reported to the Executive II in charge of Print & Mail Services and Young to the Executive II position labeled "Distribution Services Section Manager."

---

[1]The Mail and Messenger Services Unit handles all incoming, outgoing, and internal mail for the Department.  This includes receipt of all individual and business tax returns for the state.

[2]The Shred Unit is charged with shredding all confidential documents of the Department and some twenty other state government agencies.  The supervisor of this unit schedules shreddings, orders trailers to remove documents, oversees maintenance of the shredding equipment, and handles other tasks.

[3]The Pik & Pak Unit fills requests for various forms and informational bulletins.

[4]Incredibly, the Department's organizational chart, a document central to this case, appears nowhere in the record.  Rather, the Court is forced to rely on a variety of other documents and testimony to reconstruct the contents of the chart.

3

Both of the Executive II positions then reported to the Division Manager. While the Print & Mails Executive II did not oversee any significant positions besides the Print Shop (i.e., Strohm's position), the Distribution Services Executive II oversaw fleet management and warehouse operations, in addition to Young's units (i.e., the Messenger, Shred, and Pik & Pak Units).

At the time of the layoff, both Executive II positions within the Division were vacant. Accordingly, the Executive I positions held by Young and Strohm reported directly to acting Division Manager Neposchlan, with Strohm handling the Print Shop and Young covering the Messenger, Shred, and Pik & Pak Units. The remaining tasks of the Executive II, fleet management and warehouse operations, were assigned to Carla Wester ("Wester"), an Administrative Assistant II, who filled in for the vacant Executive II position.[5]

---

[5]Wester is now the current Executive II.

4

### 3.    Young's Position

Although Young largely agrees on the organizational reporting structure, she disputes the fact that she actually reported to an Executive II.  Rather, she asserts that even before the vacancies, she had bypassed the Executive II position and reported directly to prior Division Managers.  In fact, Young's evidence shows that she only reported to the Executive II position for a few weeks during training.  Further, Young claims that several former Division Managers, as well as Neposchlan himself, had acknowledged that she did not report to the Executive II.  Thus, Young's evidence suggests that Strohm's Executive I position was the only one not reporting directly to the Division Manager before the vacancies, and thus would be the only "redundant" position.

### C.    Neposchlan's Decision

Within a day or two of receiving his assignment, Neposchlan had settled on eliminating Young's position rather than Strohm's.  He claimed that his decision was based on redundancy concerns and that, in making his decision, he looked at what the managers were actually doing, not what the

charts said they were doing.

Purportedly relying on the Department's view of the reporting structure, Neposchlan asserted that Young's Executive I position was redundant, but Strohm's was not.  He explained that the vacant Executive II position above Young covered all of her job functions as well as managing the fleet and warehouse operations.  As such, Young's job could be cut without a loss of supervision, but if the Executive II position were eliminated, then the fleet and warehouse sections would be unsupervised.  On the other hand, the vacant Executive II position above Strohm did not supervise any other significant positions.  As such, it could be left vacant without any supervision being lost, so long as Strohm's Executive I position remained.  Thus, according to Neposchlan, Young's position was the rational choice for elimination.

Pursuant to Neposchlan's recommendation, Young's position was eliminated and she was laid off on October 1, 2003.[6]  Young's job functions were divided between Wester, who apparently absorbed the supervisory

---

[6]Young was offered, and accepted, a demotion.

6

duties for the Pik & Pak and Messenger Units, and Strohm, who took over supervision of the Shredding Unit.  When Young asked why her job had been cut, Neposchlan denied any involvement and suggested that, had it been possible, he would have prevented her layoff.

## II.  ANALYSIS

The Department asserts that summary judgment is appropriate for two reasons.  First, it claims that Young has failed to establish a prima facie case of sex discrimination because she has not identified a similarly situated employee.  Second, the Department argues that Young has not shown that its nondiscriminatory reason for her layoff was merely a pretext.

### A.    Applicable Standards

#### 1.    Summary Judgment Standards

"Summary judgment is proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Henry v. Jones*, 507 F.3d 558, 563 (7th Cir. 2007) (quoting Fed. R. Civ. P.

56(c)).  "Only disputes as to facts which are material, i.e., 'facts that might affect the outcome of the suit under the governing law,' and genuine, i.e., disputes for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' will preclude summary judgment." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir.)*, cert. denied*, 128 S. Ct. 654 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In deciding a motion for summary judgment, the court construes all facts and reasonable inferences in favor of the nonmoving party.  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citing *South v. Ill. EPA*, 495 F.3d 747, 751 (7th Cir. 2007)).  Nevertheless, in order to defeat a summary judgment motion, inferences must be supported by more than mere speculation or conjecture.  *Id.* (citing *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)).  A summary judgment motion may not be used "to resolve swearing contests between litigants."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

8

## 2.    Discrimination Claim Standards

An employee may support a claim of discrimination with direct evidence or by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736-37 (7th Cir. 2006)).  If a plaintiff fails to set forth a prima facie case, summary judgment in favor of a defendant is proper.  *Henry*, 507 F.3d at 564 (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)).  If, however, the plaintiff meets her initial burden, the onus shifts to the defendant  to present a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* (citing *Burks*, 464 F.3d at 751).  If such a reason is proffered, the plaintiff has the burden of showing that the asserted reasons were merely pretextual.  *Id.* (citing *Burks,* 464 F.3d at 751).

## B.    Prima Facie Case - Similarly Situated Employee

### 1.    *McDonnell Douglas* Variation - RIF or Mini-RIF

In general, a plaintiff alleging a sex discrimination claim establishes

a prima facie case by presenting evidence on each of the four elements required under *McDonnell Douglas*: "(1) [s]he is a member of a protected class, (2) [s]he reasonably performed to [her] employer's expectations, (3) [s]he was subject to an adverse employment action and (4) the position remained open." *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668). Nevertheless, the *McDonnell Douglas* test "is not inflexible and is appropriately adapted where necessary to 'reflect more fairly and accurately the underlying reality of the workplace.'" *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006), *cert. denied,* 127 S. Ct. 2973, 168 L. Ed. 2d 702 (2007) (quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000)). Thus, the elements that a plaintiff must show often change depending upon the underlying factual scenario.

Although the parties agree that the first three elements are met, they dispute which variation of the *McDonnell Douglas* test should apply with respect to the fourth element. The Department of Revenue argues that the test employed in reduction-in-force ("RIF") cases provides the pertinent

10

rule. "A RIF occurs when an employer permanently eliminates certain positions from its workforce." *Michas*, 209 F.3d at 693 (citing *Bellaver*, 200 F.3d at 494). Under RIF standards, the plaintiff would have to show that "other similarly situated employees who were not members of the protected class were treated more favorably." *Id.* (citing *Bellaver*, 200 F.3d at 494).

Attempting to avoid the difficulties of identifying a "similarly situated employee," Young argues that this is a mini-reduction-in-force ("mini-RIF") case. A mini-RIF arises when an employee is laid off, but "the employee's responsibilities are assumed by other members of the corporate workforce." *Id.* (citing *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995)). Under the mini-RIF standards, a plaintiff need not show that a similarly situated employee received more favorable treatment; instead she must demonstrate that her "duties were absorbed by employees who were not members of the protected class." *Id.* (citing *Bellaver*, 200 F.3d at 495).

In determining whether to apply the RIF or mini-RIF requirements, the key inquiry is whether the employer still needed someone to handle the terminated employee's job functions. *Merillat*, 470 F.3d at 690 n.1; *Paluck*

11

*v. Gooding Rubber Co.*, 221 F.3d 1003, 1011 n.5 (7th Cir. 2000). In this

case, it is undisputed that Young's job functions were transferred to others

rather than eliminated altogether. Even so, however, the mini-RIF line of

cases fails to help Young. In order to succeed on a sex discrimination claim

under the mini-RIF framework, a plaintiff must show that her duties were

absorbed mainly by male employees. *See Bellaver*, 200 F.3d at 495 (noting

that a previous case stood for the proposition that a mini-RIF exists where

job duties "were absorbed mostly" by employees outside of the protected

class); *Hamilton v. National Propane*, 276 F. Supp. 2d 934, 946 (W.D. Wis.

2002) ("At minimum, case law indicates that plaintiff's duties need to be

absorbed mostly by [employees outside of the class], not entirely");

*Kazhinsky v. William W. Meyer & Sons, Inc.*, 2003 WL 22735867, *5 (N.D.

Ill. Nov. 19, 2003) ("Because half of the individuals who assumed

[plaintiff's] job duties were in the protected class, she cannot show that her

duties were assumed solely or even primarily by employees outside the

protected class."). While Doug Strohm, a male, absorbed some of Young's

prior responsibilities, the record also shows that Carla Wester, a female,

took over Young's duties relating to the Pik & Pak Unit and the Mail and Messenger Services Unit.  Indeed, it appears from the record that Wester, not Strohm, absorbed the bulk of Young's duties.[7]  As such, the inference of discrimination, normally present in a mini-RIF, does not arise on these facts, because the majority of Young's job duties were absorbed by one of Young's fellow class members.  *See Bellaver*, 200 F.3d at 495 ("[T]he inference of discrimination arises in . . . 'mini-RIFs[]' where the terminated employee's duties are absorbed by other employees not in the protected class.").  Lacking this essential inference, Young cannot succeed in availing herself of the lighter burdens of the mini-RIF analysis.

## 2.    Similarly Situated Employee

Though failing to qualify under the mini-RIF, Young may still establish a *prima facie* case by showing that a similarly situated male received more favorable treatment.  *See id.* (quoting *Wichmann v. Bd. of Trustees of S. Ill. Univ.*, 180 F.3d 791, 802 (7th Cir. 1999), *vacated and remanded on other*

---

[7]Young testified that, depending on the time of year, the Shredding Unit would occupy between 25% and 50% of her time.  Thus, Strohm could not have absorbed the bulk of Young's duties, because he took less than half of them.

*grounds*, 528 U.S. 1111, 120 S. Ct. 929, 145 L. Ed. 2d 807 (2000) (noting that whether the case is analyzed as a RIF or a mini-RIF, the central question remains the same: whether similarly situated male employees were treated more favorably); *see also Merillat*, 470 F.3d at 690 n.1 ("The retention of an employee outside the protected class to perform the plaintiff's duties is nothing more than a demonstration of more favorable treatment . . . .").

In this case, Young identifies Strohm as a similarly situated employee and asserts that she was laid-off rather than him because of her sex. The Department, however, contends that Strohm was not similarly situated and denies that sex was a factor in selecting Young's position.

"'[S]imilarly situated' means . . . that members of the comparison group are comparable to the plaintiff 'in all *material* respects.'" *Henry*, 507 F.3d at 564 (quoting *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)). "[T]he inquiry asks only whether 'members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment.'" *Id.* (quoting

14

*Crawford*, 461 F.3d at 846). "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.'" *Id.* (quoting *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). "Factors to consider include whether the employees 1) had the same job description, 2) were subject to the same standards, 3) were subject to the same supervisor, and 4) had comparable experience, education, and other qualifications." *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 923 (7th Cir. 2007) (citing *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005)). Nevertheless, substantial similarity is all that is required, rather than complete identity. *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) (citing *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir.), *cert. granted*, 128 S. Ct. 30, 168 L. Ed. 2d 807 (2007)).

The undisputed facts show the following. First, Young and Strohm both shared the same supervisor, at least at the time of the layoff. Further, both Young and Strohm held the position of "Executive I," had met the

15

same standards and requirements to attain that position, and both were charged with supervising particular sub-parts of the Division. While acknowledging these similarities, the Department contends that the job duties of these supervisor positions differed because each employee oversaw different units. The Department, however, fails to explain why the supervisory roles would differ so dramatically between one unit and another. Indeed, this line of argument is largely foreclosed by the fact that Strohm absorbed one of Young's former units with little additional training. Therefore, this Court must conclude that the two Executive I positions are sufficiently similar for purposes of plaintiff's prima facie case.[8]

### C.    Legitimate, Nondiscriminatory Reason

Even where a prima facie showing of sex discrimination has been made, the defendant may still rebut the plaintiff's case by articulating a legitimate, non-discriminatory reason for its adverse employment action. *Barricks*, 481 F.3d at 559 (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691,

---

[8]The Department also attempts to rely on its version of the reporting structure to suggest that the two Executive I positions were dissimilar. As discussed below in the context of the pretext analysis, this argument rests on disputed material facts. Thus, summary judgment on this ground would be inappropriate.

696 (7th Cir. 2006)).   In this case, the Department has offered such a reason: Young's position was eliminated because it constituted a redundant layer of management.  *See Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574 (7th Cir. 2003) (finding that the elimination of management overlap was a legitimate, nondiscriminatory reason for a termination).   Thus, Young bears the burden of showing that this ostensibly legitimate reason is actually a pretext.  *Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir.), *cert. denied*, 128 S. Ct. 357 (2007) (citing *Burks*, 464 F.3d at 750-51).

## D.    Pretext

"'A pretext . . . is a deliberate falsehood,'"  *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007) (quoting *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006)), "'a phony reason for some action,'" *Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006) (quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999)).  To establish pretext, a plaintiff must show both that "the employer's nondiscriminatory reason was dishonest; and [that] the employer's true

17

reason was based on a discriminatory intent." *Brown*, 499 F.3d at 683 (quoting *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007)) (internal quotations omitted).  Thus, the plaintiff must present "'evidence tending to prove that the employer's reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge . . . ." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003) (quoting *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996)).  Briefly stated, "[t]he only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." *Id.* (citing *Lesch v. Crown & Cork Seal Co.*, 282 F.3d 467, 474 (7th Cir. 2002)).

Young contends that the Department's reason for her layoff, the need to eliminate a redundant position, is factually baseless and does not represent its true motivation because her position was not actually redundant.  In particular, Young relies on deposition testimony establishing that, with the exception of a short period during her training, she never reported to the Executive II position.

The Department responds by suggesting that even if Young's version of the facts were true, Neposchlan did not know that Young actually reported directly to the Division Manager.  Rather, the Department claims that Neposchlan actually believed, erroneously or not, that Young's position was redundant.  As such, it asserts that Young has only shown that the decision was incorrect, not that it was a pretext.  *See, e.g., Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (citations omitted) ("This circuit adheres to the honest-belief rule: even if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist.").  This factual claim, however, contradicts Young's sworn affidavit stating that Neposchlan had previously agreed with her that the reporting structure represented on the organizational chart was incorrect with regard to her position.[9]  As noted above, a summary

---

[9]The Department summarily asserts that the record does not support this assertion.  Young's affidavit, however, provides these facts nearly verbatim.  While "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004), those with record support can defeat a summary judgment motion, *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (citing *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)).  "The record, moreover, may include the self-
(continued...)

judgment motion is not a proper vehicle for resolving swearing matches. *See, e.g., Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) (citing *Payne*, 337 F.3d at 770). Even more importantly, if Young's testimony were credited, a jury could find that Neposchlan's purported justification of redundancy was untruthful. Indeed, Young's testimony, if believed, would establish that Neposchlan knew that no redundancy existed, yet eliminated her position under that pretext. As such, a genuine issue of material fact exists on the question of pretext, making summary judgment inappropriate. *See, e.g., Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 833 (7th Cir. 2007) (reversing grant of summary judgment where "[t]he evidence was sufficient to allow a jury to find pretext"); *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995) ("If the employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses.").

------

[9](...continued)

serving affidavit itself, provided that the affidavit 'meets the usual requirements for evidence on summary judgment - including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial.'" *Id.* (citing *Payne*, 337 F.3d at 773). Here, the affidavit, based on Young's personal knowledge, meets this standard.

### III.  CONCLUSION

Because issues of material fact exist, the Department of Revenue's

Motion for Summary Judgment (d/e 15) is DENIED.


IT IS SO ORDERED.

ENTERED:                                    January 16, 2008

FOR THE COURT:                              /s Judge Richard Mills
                                            United States District Judge