IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANGELA YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 06-3106 |
| | ) | |
| ILLINOIS DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Angela Young ("Young") sued her employer, the Illinois Department of Revenue ("Department"), for sex discrimination.

A jury found in Young's favor and awarded her $ 325,000.

Concluding that the evidence was insufficient to impute liability to the Department, this Court now enters judgment as a matter of law in favor of the Department.

I. BACKGROUND

In October 2003, the Department ordered a number of lay-offs. Supervisors were instructed to identify "redundant or stacked" levels of management and eliminate those positions. Young was among those laid-off.[1]

Young sued the Department, arguing that Jay Neposchlan ("Neposchlan") eliminated her position because of her sex. In response, the Department claimed that Young's position was eliminated solely because it was a stacked level of management, i.e., there were two supervisors between the head of the department and the front-line staff. After the denial of the Department's motion for summary judgment, the case went to a jury. Young prevailed and the jury awarded her $325,000.

Following trial, four sets of briefs were filed, two addressing liability and two addressing damages. The first of the liability briefs relate to the Department's renewed motion for judgment as a matter of law [d/e 47, 48, & 66]. The second set of briefs was filed pursuant to the Court's request.

---

[1] Young was given another job within the Department.

These filings address whether the Court's prior summary judgment order was correct in light of subsequent case law [d/e 67, 70, 71, 73].

Both parties have also briefed damages issues. The Department filed a motion for judgment as a matter of law or, alternatively, a new trial regarding the $325,000 award [d/e 55, 56, & 62]. Young has also filed a "Brief of Plaintiff Regarding Equitable Remedies" [d/e 57, 65].

## II.  APPLICABLE STANDARDS

Judgment as a matter of law is proper where the trial evidence, viewed in the light most favorable to the non-moving party, is insufficient to support the verdict. *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). The court does not re-weigh evidence or make credibility determinations but merely "assure[s] that the jury had a legally sufficient evidentiary basis for its verdict." *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, (7th Cir. 2004). "[T]his is fundamentally the same standard that [courts] use in reviewing a decision on summary judgment, with the important difference that we now know exactly what evidence was

3

put before the jury." *Id.*

Alternatively, the Department also seeks a new trial under Federal Rule of Civil Procedure 59. "[N]ew trials granted because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995) (citing *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)).

### III.  ANALYSIS

#### A.  Denial of Summary Judgment

Before addressing the motions, a preliminary issue must be settled. Prior to trial, this Court denied Defendant's motion for summary judgment, finding, in part, that Young had made out a prima facie case under the *McDonnell Douglas* burden-shifting framework. In reaching this conclusion, the Court found that Young "[t]hough failing to qualify under the mini-RIF" analysis, could nevertheless "establish a *prima facie* case by showing

that a similarly situated male received more favorable treatment." *Young v. Ill. Dep't of Rev.*, 2008 WL 686986, *4 (C.D. Ill. Jan. 16, 2008).

Following trial and the briefing of the current motions, *Petts v. Rockledge Furniture LLC*, 534 F.3d 715 (7th Cir. 2008) was decided. In that case, the Seventh Circuit, with little elaboration, found that where the mini-RIF analysis applied, it applied exclusively:

> [Plaintiff] next argues that a court need not apply the mini-RIF variation if doing so makes it more difficult for a plaintiff to prove her prima facie case. However, we have said that where the plaintiff's duties were reabsorbed by another employee after the plaintiff's termination . . . we *must* apply the indirect burden shifting method for a mini-reduction-in-force situation. [Plaintiff's] duties were absorbed by other employees after her position was eliminated; so the mini-RIF variation of the prima facie case was properly utilized.

*Id.* at 725 (internal quotations and citations omitted).

Concerned about this development, the Court requested that the parties file supplemental briefs explaining what effect, if any, *Petts* had on the case. In their briefs, the parties dispute whether *Petts* actually controls.

5

A more fundamental question, however, was also raised: whether reconsideration of the denial of a summary judgment motion is proper after a trial.

Young argues that this Court cannot reconsider its summary judgment motion. For support, she points to a line of cases that forbids appellate courts from reviewing the correctness of summary judgment rulings following a trial on the merits. *See, e.g., Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714 (7th Cir. 2003); *Watson v. Amedco Steel, Inc.*, 29 F.3d 274 (7th Cir. 1994). These cases find that, post-trial, the focus of a court should be on the evidence admitted at trial, not the summary judgment record.

The Department acknowledges this line of cases, but argues that the rule is one of appellate review only. While the context of these cases is that of appellate review, the logic underlying the rule also reaches to a district court's post-trial review. Indeed, the Seventh Circuit intimated as much in *Watson*, explaining that "the proper redress for the erroneous denial of summary judgment 'would not be through appeal of that denial but through subsequent motions for judgment as a matter of law and appellate review

6

of those motions if they were denied.'" *Watson*, 29 F.3d at 279 (quoting *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir. 1992)).

Of course, this restriction on review only applies to sufficiency of evidence claims; courts are free to review questions of law addressed in pre-trial motions. Technically, the disputed merits issue at the summary judgment stage was a narrow question of law: whether a plaintiff is limited solely to a mini-RIF analysis where her position was absorbed by others rather than eliminated. Nevertheless, this legal question is merely one facet of the larger sufficiency of evidence inquiry: Did Young make a prima facie case under *McDonnell Douglas*? Where this is the ultimate question, "review . . . would be particularly inappropriate" because "the *McDonnell Douglas* burden-shifting framework falls away once there has been a jury trial and verdict." *Watson*, 29 F.3d at 279. Put another way, the propriety of denying a summary judgment motion based on the sufficiency of the evidence is mooted by a trial. This is as true for district courts as it is for appellate ones. As such, review of the summary judgment motion at this juncture is improper.

7

Thus, regardless of whether *Petts* invalidates the prior denial of summary judgment, the Court finds that it cannot now revisit that opinion. Rather, the inquiry turns to the sufficiency of the evidence presented at trial.

B.   **Sufficiency of the Evidence**

The Department raises two arguments in support of its quest for judgment as a matter of law. First, it argues that the evidence was insufficient for a reasonable jury to conclude that gender was the impetus behind Neposchlan's recommendation. Second, it asserts that even if the evidence did suffice regarding Neposchlan's intent, liability for the Department is improper because Day was the ultimate decision maker and he conducted several independent reviews.

1.   **Sufficiency of Evidence Relating to Neposchlan's Motivations**

The Department begins by arguing that the evidence presented at trial was insufficient to establish liability. To aid in exploring this claim, a brief summary of the various theories of the case and the evidence is in order.

Young's theory of the case was that her supervisor, Neposchlan,

selected her position for elimination rather than that of a male co-worker, Doug Strohm ("Strohm"), because of Young's gender. Though acknowledging the Department's need to conduct a layoff, Young argues that she and Strohm were similarly situated because both held the same position, Executive I, and both reported directly to Neposchlan.

The Department conceded that both Young and Strohm were both Executive I's, but disagreed with Young's contention that they were similarly situated or that gender motivated her selection. The Department's layoff was aimed at, among other things, eliminating "stacked layers of management." Although the Executive I positions held by Strohm and Young were both technically required to report to Executive II's, the Executive II position above Strohm was long vacant. Therefore, he reported directly Neposchlan. In contrast, the position above Young was filled and therefore she was supposed to report to that Executive II who, in turn, was under Neposchlan's supervision. Therefore, the Department argued, Young's position was an example of a stacked layer of management, whereas Strohm's was not.

9

Based on this organizational structure, as well as the lack of significant direct or circumstantial evidence, the Department argues that the jury could not have reasonably found against it. This Court disagrees.

Generally, a verdict will stand where a *prima facie* case has been made and where evidence suggests that the employer's justification for the action was merely a pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). As the Supreme Court explained, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.*

In this case, the existence of the *prima facie* case and the issue of pretext both turn on the same questions: whether Neposchlan believed that Young's position, but not Strohm's, was a "stacked layer of management" or whether this was simply a pretext. Although the evidence may not be compelling, this Court finds that it suffices. Young, as well as several former Department employees, testified that she actually reported directly to Neposchlan, regardless of the organizational chart. If the jury were to

10

believe this evidence (which it evidently did), then Neposchlan's justification for elimination (that Young's position was a "stacked level of management") would be undercut. Further, this evidence also suggests that Young and Strohm were similarly situated, because both were Executive I's reporting directly to Neposchlan. Thus, this evidence sufficiently establishes both a *prima facie* case and calls into question the employer's justification for its action. Finally, although credibility is not reviewed, it should also be noted that the strength of Young's case was further bolstered by Neposchlan's initial denial of having played any role in Young's termination. The jury could have used this inconsistency to discredit Neposchlan's in-court explanations for his actions.

Therefore, this Court finds that the evidence presented at trial was sufficient to permit a reasonable jury to conclude that Neposchlan's decision to eliminate Young's position was motivated by gender.

### 2.    Imputation of Discrimination to Department

The Department next argues that even if the evidence showed that Neposchlan himself harbored a discriminatory animus, liability for his

recommendation cannot be imputed to the Department. Relying on the undisputed testimony of Jim Day ("Day"), the Acting Program Administrator, the Department argues that Day, not Neposchlan, was the decisionmaker and that his independent reviews of Neposchlan's recommendation shield the Department from liability.[2]

"Animus harbored by a non-decisionmaker is usually ineffective to show pretext where . . . there is a non-retaliatory reason for the employer's decision." *Metzger v. Ill. State Police*, 519 F.3d 677, 682 (7th Cir. 2008). Nevertheless, "in certain circumstances a non-decisionmaker can exert influence of such a degree as to make his employer liable for his actions." *Id.* at 682. This occurs where the non-decisionmaker possesses such "singular influence" that he becomes, in effect, the true decisionmaker. *Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 918 (7th Cir. 2007) (citing *Little v. Ill. Dep't of Rev.*, 369 F.3d 1007, 1015 (7th Cir. 2004)). In such cases, a nominal decision-maker's "[m]ere 'paper review' of the

[2]In this Court's earlier opinion denying summary judgment, Neposchlan was assumed to be the decisionmaker. It was not until trial that Day's testimony entered into the record and suggested otherwise.

informer's recommendation will not shield the employer from liability if [his] recommendation is [improperly] motivated." *Id.* (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1147 (7th Cir. 1993)).  However, "where a decision maker is not wholly dependant on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker." *Id.* (citing *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 708 (7th Cir. 2005); *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997)).

Young argues that the evidence is sufficient to support a jury finding that Neposchlan was the decisionmaker.  For support, Young points to the following examination of Day:

> Q: And Mr. Neposchlan, at some point in time, recommended that Angela Young's position be eliminated; am I correct?
> A: That's correct.
> Q: And essentially, you adopted his recommendation?
> A: Yes.
> Q: You didn't -- you didn't select Ms. Young's position to be

eliminated, did you?

A:   No.

This passage, however, actually shows that Neposchlan was not the ultimate decisionmaker since his role was simply to make a "recommendation." Although Day stated that he did not "select" Young's position, this statement must be read in context. As explained below, Day may not have chosen Young's position, but he did independently review Neposchlan's recommendations and investigated whether Strohm's position should have been eliminated rather than Young's. Therefore Day, at least nominally, was the final decisionmaker.

The question then becomes whether the evidence was sufficient for the jury to conclude that Neposchlan, though not the final decisionmaker, possessed "singular influence" over Day such that Neposchlan became the true decision-maker. Young argues that such "singular influence" existed because Neposchlan was the one who first recommended that Young's position be eliminated and because he withheld the fact that Young actually reported to him.

Nevertheless, "singular influence" cannot be established where the

14

ultimate decisionmaker undertakes an independent review. *Brewer*, 479 F.3d at 918 ("[W]here a decision maker . . . conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker.")  Here, numerous reviews were conducted by Day.

First, Day rejected Neposchlan's original recommendations for elimination (a number of underperformers) because Neposchlan was not employing the relevant lay-off criteria.  This shows that Day was not uncritically following Neposchlan's suggestions.

Second, and more importantly, after Neposchlan selected Young's position, Day's undisputed testimony established that he conducted at least two further reviews of that recommendation.  The initial review occurred when Neposchlan made his recommendation to eliminate Young's position.  Day testified that he reviewed the organizational chart to see if Young's supervisory position was actually redundant.  Only then did he rely on Neposchlan's report.  A subsequent review was also conducted when an employee in the Personnel Office, as well as someone in the Director's

Office, inquired as to whether Strohm's position could be eliminated rather than Young's. Day testified that he again reviewed the organization charts for the company and found that the elimination of Strohm's position would be improper because "there would be no supervision" over the front-line staff. In contrast, the organizational chart revealed that Young's position was redundant or stacked since "there were two supervisors in a row between the position occupied by [Neposchlan] and the frontline staff. . . ." Therefore, on two separate occasions Day compared Neposchlan's recommendation to the Department's organizational chart and, during one review, he specifically considered whether Strohm's position could be eliminated instead of Young's but concluded that the organizational charts precluded such an action.

Young responds by arguing that this review was not sufficiently independent because it was a "paper review." Day, however, did more than conduct a "[m]ere 'paper review' of the informer's recommendation." *Brewer*, 479 F.3d at 918 (citing *Gusman*, 986 F.2d at 1147). Instead of relying solely on Neposchlan's assertions, Day independently reviewed the

16

organizational structure of the Department and determined that Young's position was, in fact, a stacked layer of management, whereas Strohm's was not. Although this information came from written sources, the "paper review" rule is not in place to bar reliance on memorialized information; rather, it merely establishes that a review is not "independent" if limited to a biased non-decisionmaker's recommendation. *See id.* at 918 ("It does not matter that in a particular situation much of the information has come from a single, potentially biased source, so long as the decision maker does not artificially or by virtue of her role in the company, limit her investigation to information from that source."). In this case, Day looked to the only source which would reasonably be expected to shed light on the propriety of Neposchlan's recommendation: the organizational chart. As such, Day's independent reviews shield the Department from any liability stemming from Neposchlan's animus.

### C. Remaining Motions

Several other motions remain pending before this Court. First, the Department has also moved for a new trial. Under Federal Rule of Civil

17

Procedure 50(c)(1), this motion must be addressed.  Because this Court found that judgment as a matter of law was warranted, it also finds that the verdict was against the manifest weight of the evidence.  Therefore, a new trial is conditionally granted.

The remaining motions relate to damages issues.  In light of this Court's grant of the Department's motion for judgment as a matter of law, these motions are now denied as moot.

## IV.   CONCLUSION

Because an independent review of Neposchlan's recommendation was conducted, this Court GRANTS the Department's motion for judgment as a matter of law and CONDITIONALLY GRANTS its motion for a new trial [d/e 47].  The remaining motions [d/e 55] are DENIED as moot.

IT IS SO ORDERED.

ENTERED:                                        March 11, 2009

FOR THE COURT:                        /s Judge Richard Mills
                                                            United States District Judge